# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
No. 12-825V
Filed: September 30, 2014
For Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| TARA A. GILL, | \* | |
| | \* | |
| Petitioner, | \* | Interim attorneys' fees and costs decision; |
| | \* | Respondent objects to interim fee award; |
| v. | \* | Excessive Fees and Costs; Paralegal's |
| | \* | hourly rate |
| SECRETARY OF HEALTH | \* | |
| AND HUMAN SERVICES, | \* | |
| | \* | |
| Respondent. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Tara A. Gill, Clearfield, PA, for petitioner (pro se).
Jennifer L. Reynaud, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION AWARDING INTERIM ATTORNEYS' FEES[1]

On June 9, 2014, prior to the withdrawal of Mark L. Krueger, Esq. ("Mr. Krueger") as attorney of record, petitioner filed a Motion for Interim Payment of Attorneys' Fees, requesting that the Court award petitioner $29,929.26 in interim attorneys' fees and costs. Petitioner is currently *pro se* and is seeking an expert report to support her allegations. No decision on entitlement has been issued.

For the reasons set forth below, the undersigned awards petitioner $27,364.96 for interim attorneys' fees and costs incurred up to and including June 9, 2014.

---

[1] Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

# PROCEDURAL HISTORY

On November 29, 2012, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2006), alleging that she suffered multiple sclerosis ("MS") and an immune deficiency that was caused in fact by the influenza vaccination she received on December 18, 2009.  Pet. at 4.  From January 2013 through March 2013, petitioner filed twenty-eight exhibits of medical records.  On March 11, 2013, the undersigned ordered petitioner to obtain outstanding pre-vaccination records, which were filed in May and July 2013.

On August 27, 2013, the undersigned ordered petitioner to file an expert report by November 26, 2013.  Petitioner subsequently requested and was granted five extensions of time to file an expert report.  During a status conference on May 14, 2014, Mr. Krueger reported that he had consulted with multiple experts, none of whom would agree to provide an expert report, and he had engaged in multiple conversations with petitioner about either withdrawing from or dismissing the case.  The undersigned ordered Mr. Krueger to tell the court whether he would file an expert report, a motion to withdraw as counsel, or a motion to dismiss by June 12, 2014.

On June 9, 2014, petitioner filed an application for interim attorneys' fees and costs, requesting $29,929.26, consisting of $26,580.00 in attorneys' fees and $3,349.96 in costs.  The application requests a rate of $300 per hour for Mr. Krueger and $150 per hour for his paralegal.  Petitioner submitted an invoice of fees and costs incurred.

Later on June 9, 2014, Mr. Krueger filed a motion to withdraw as counsel, stating that counsel and petitioner had "reached an impasse with respect to the objectives and course of litigation pending before this Court."  Pet'r's Mot. Withdraw at 1.  The motion was granted, and petitioner became *pro se*.

Respondent filed her response to petitioner's motion for interim attorneys' fees and costs on August 21, 2014, raising her objection to any award of interim attorneys' fees and costs under the Vaccine Act, and also arguing that petitioner has not established that her claim is supported by a reasonable basis.

Mr. Krueger filed a reply on September 24, 2014.  Although Mr. Krueger is no longer petitioner's attorney of record, the undersigned accepts the filing as information relevant, reasonable, and necessary to the proceeding.[2]  Mr. Krueger argues that he had a reasonable basis to bring the petition and to attempt to find expert support for petitioner's claims.

---

[2] The Vaccine Act gives a special master the authority to obtain information that "may be reasonable and necessary" from "any person."  42 U.S.C. § 12(d)(3)(B).  Vaccine Rule 8 requires that a special master "consider all relevant and reliable evidence," and Vaccine Rule 15 gives a special master the authority to consider information from third parties.  See Turner v. Sec'y of HHS, No. 02-1437V, 2014 WL 1493119 (Fed. Cl. Spec. Mstr. Mar. 26, 2014) (allowing a *pro se* petitioner's former counsel to file an application for attorneys' fees and costs over respondent's objection that former counsel was not a party to the case); see also Tutza v. Sec'y of HHS, No. 04-223V, 2012 WL 2362594 (Fed. Cl. Spec. Mstr. Apr. 20, 2010); Gitesatani v. Sec'y of HHS, No. 09-799V, 2011 WL 5025006 (Fed. Cl. Spec. Mstr. Sept. 30, 2011).

Respondent's counsel informed the undersigned's law clerk that she did not wish to file a sur-response. This matter is now ripe for adjudication.

## FACTUAL HISTORY

Petitioner has a history of proctitis and ulcerative colitis. Med. recs. Ex. 24, at 4, 7. On January 24, 2012, she reported that she has a history of chronic fatigue and experienced escalating symptoms around age forty (four years earlier). Med. recs. Ex. 13, at 1. She also has a history of recurrent infections. She visited Dr. Kenneth Bergman, an allergist, three months before her vaccination, complaining of "difficulty with multiple sinus infections which occur on a year round basis." Med. recs. Ex. 39, at 10. In 2008, she had a urinary tract infection and recurrent sinusitis. Med. recs. Ex. 41, at 13, 17, 19.

On December 3, 2009, approximately two weeks before her vaccination, petitioner visited her primary care doctor, Dr. Gregory Adams, for an upper respiratory infection. Med. recs. Ex. 2, at 5–7. She had head and chest congestion with a cough for four days and a temperature of 98.6 degrees, although she reported she had had a low-grade fever for two days. Id.

Petitioner received trivalent influenza vaccine and $H_1N_1$ influenza vaccine on December 18, 2009. Med. recs. Ex. 2, at 53–54. Her temperature at the time of vaccination was recorded as 98.1 degrees. Id. at 54.

In her affidavit, petitioner alleges that she had sore axillae (armpits) with lumps in them one-and-a-half to two weeks after her vaccinations (which would have been in late December 2009 or early January 2010). Ex. 28, at 1. However, petitioner does not appear to have sought any medical treatment until February 2010. On February 19, 2010, she visited the Union Hospital Emergency Room ("ER"), during which she complained of shortness of breath, chest pain for the past five days, and heart palpitations. Med. recs. Ex. 19, at 6. She was discharged with a diagnosis of atypical chest pain. Id. at 7–19. Petitioner's February 19, 2010 medical records do not contain any complaints about axilla irregularities or severe pain.

On March 25, 2010, petitioner visited Glasgow Medical Clinic with a possible sinus infection. Med. recs. Ex. 2, at 7–8. She had a headache, cough, nasal discharge, and swollen lymph nodes in her axillae and groin and reported these symptoms had been present since mid-January 2010. Id. She reported she had been told her glands were swollen when she visited the ER in February. Id. at 8.

Petitioner visited the emergency room again on March 29, 2010, complaining of fatigue, enlarged lymph nodes, "throat fullness" with pain, and occasional shortness of breath. Med. recs. Ex. 14, at 18. Enlarged lymph nodes were observed in her right axilla, left neck, and groin. Id. at 19. She was discharged with a diagnosis of fatigue and lymphadenopathy. Id.

Petitioner had a CT scan of her chest, abdomen, and pelvis on April 1, 2010, which showed no significant lymphadenopathy in her chest and no enlargement of lymph nodes in her

abdomen.  Med. recs. Ex. 2, at 47–49.  She had an increased number of perirectal lymph nodes, which were believed to be consistent with proctitis.  Id. at 49.

On May 6, 2010, Dr. Stephanie Lee, an infectious disease specialist, found no palpable lymphadenopathy, although petitioner reported painful lymph nodes.  Med. recs. Ex. 16, at 6.  Dr. Lee's impression was that petitioner had extreme anxiety, although her main complaint was swollen lymph nodes that were not evident on exam or prior imaging.  Id.

Petitioner saw another infectious disease specialist, Dr. Tuesdae Stainbrook, on June 9, 2010, who was also unable to observe lymphadenopathy.  Med. recs. Ex. 12, at 14.  Petitioner recounted she felt worse after receiving vaccinations for seasonal flu and $H_1N_1$ in December 2009.  Id.  Dr. Stainbrook wrote that her examination was normal but noted concern about a lymph node in her perirectal region.  Id.

Rheumatologist Dr. Marc Levesque examined petitioner on August 3, 2010, and diagnosed her with fibromyalgia and/or chronic fatigue syndrome, as well as possible mild depression.  Med. recs. Ex. 3, at 4.

Petitioner consulted with a surgeon on September 13, 2010, who performed a right axillary node excision and biopsy on October 4, 2010.  Med. recs. Ex. 6, at 55, 63.  These revealed only benign findings.  Id.

On February 10, 2011, petitioner visited Dr. Aldino Pierotti, whom she told she had a compromised immune system, poor sleep, headaches, dizziness, gas, no energy, irritability, and decreased memory.  Med. recs. Ex. 9, at 11.  On examination, she had tender left posterior neck nodes.  Id. at 12.  He prescribed doxycycline for Epstein-Barr virus and mycoplasma infections.  Id. at 10.  He also prescribed various supplements, including Nattokinase (for "oxygenation"), Firbrocalm (for "aches and pains"), and Proboost and Immunivir (for "immunity").  Id.

On February 28, 2011, petitioner saw a neurologist, Dr. John Carlson.  Med. recs. Ex. 43, at 284.  He noted her history of a motor vehicle accident.  Id.  A March 18, 2011 brain MRI showed multiple small non-specific foci of T2 hyperintensity in the bilateral periventricular and subcortical white matter.  Id. at 434.

On July 12, 2011, Dr. Carlson wrote a letter to Dr. Baltizar Corcino, petitioner's primary care physician.  Med. recs. Ex. 25, at 105–06.  Dr. Carlson noted that petitioner's MRI scan findings were consistent with MS.  Id. at 106.  Dr. Carlson also stated petitioner had requested "a note to say that the MS was caused by Mycoplasma.  I told her that currently we think that MS is inherited but that it is triggered by an infection (which could in some people be a virus or Mycoplasma)."  Id. at 105.  Dr. Carlson prescribed Copaxone for petitioner's MS in August 2011.  Id.; Med. recs. Ex. 43, at 403.

On February 7, 2012, petitioner saw Dr. James DeAngelo, an allergy/immunology specialist, and complained of chronic fatigue, adenopathy, frequent sinopulmonary infections, facial pressure, and headaches that began to escalate when she turned 40 (which would have been in 2007) but "may have been present prior to that."  Med. recs. Ex. 13, at 1.

On February 27, 2012, petitioner saw her neurologist, Dr. Carlson, again.  Med. recs. Ex. 43, at 403–04.  He listed diagnoses of MS, immunodeficiency, and sinus tachycardia.  Id. at 404.  He ordered a March 26, 2012 brain MRI, which showed non-specific white matter lesions.  Id. at 405.

On September 25, 2012, Dr. Henry DelaTorre, petitioner's new primary care physician, wrote, "Symptoms of VIDs [variable immune deficiency syndrome] started after she had H1N1 virus and later got the Flu/H1N1 immunization.  This probably caused the immune deficiency."  Med. recs. Ex. 10, at 56.

On October 1, 2012, petitioner reported to rheumatologist Dr. Frederick Murphy's physician's assistant that she had been a lead government investigator of biologic war in Maryland.  Med. recs. Ex. 27, at 3.  The physician's assistant wrote, "Patient believes that she may have been exposed to biologic agents either accidental or intentional via the nature of this position.  Patient has also received vaccinations for unusual biologic agents."  Id.

Petitioner retained Mr. Krueger as her attorney around August 3, 2012 to investigate and file a claim relating to injuries she allegedly sustained as a result of her seasonal flu vaccine.  Reply at 3.  Mr. Krueger and his paralegal sent requests for medical records in October 2012 and filed the petition on November 29, 2012 before receiving all of the medical records.  Id.

## DISCUSSION

### I.      Entitlement to Fees Under the Vaccine Act

Under the Vaccine Act, a special master or the Court of Federal Claims may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard.  Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152 at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).  A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred.  Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  Petitioners are "entitled to a presumption of good faith."  Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Program rules.  It has been determined to be an "objective consideration determined by the totality of the circumstances."  McKellar v. Sec'y of HHS, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011).  In determining reasonable basis, the court looks "'not at the likelihood of success [of a claim] but more to the feasibility of the claim.'"  Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of HHS, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)).  Factors to be considered include factual basis, medical support, jurisdictional issues, and the circumstances under which a petition is filed.  Turner, 2007 WL 4410030, at *6–*9.  Traditionally, special masters have been "quite generous" in finding reasonable basis.  Turpin v. Sec'y of HHS, No. 99-564V, 2005 WL

1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); <u>see also</u> <u>Austin v. Sec'y of HHS</u>, 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("The policy behind the Vaccine Act's extraordinarily generous provisions authorizing attorney fees and costs in unsuccessful cases—ensuring that litigants have ready access to competent representation—militates in favor of a lenient approach to reasonable basis.").  Special masters have found reasonable basis to file a claim absent medical records or opinions supporting vaccine causation.  <u>See</u> <u>Austin</u>, 2013 WL 659574, at *8; <u>Hamrick</u>, 2007 WL 4793152.

## II.      Interim Fee Awards are Appropriate Under the Vaccine Act

The Federal Circuit ruled that interim fee awards are permissible under the Vaccine Act in <u>Avera v. Secretary of Health and Human Services</u>, 515 F.3d 1343, 1352 (Fed. Cir. 2008).  The Federal Circuit again found interim fee awards appropriate under the Vaccine Act in <u>Shaw v. Secretary of Health and Human Services</u>, 609 F.3d 1372 (Fed. Cir. 2010).  <u>See also</u> <u>Cloer v. Sec'y of HHS</u>, 675 F.3d 1358, 1361–62 (Fed. Cir. 2012), <u>aff'd</u> <u>sub nom.</u> <u>Sebelius v. Cloer</u>, 133 S. Ct. 1886 ("Congress made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act."); Vaccine Rule 13(b) (mentioning "interim fees").

Subsequently, a number of judges and many special masters have found interim fee awards permissible under various circumstances.  <u>See, e.g.</u>, <u>Woods v. Sec'y of HHS</u>, 105 Fed. Cl. 148, 154 (Fed. Cl. 2012) (Judge Williams affirmed the special master's award of interim fees and suggested that when counsel withdraws, and it is unknowable how long case resolution might take, an interim award may be appropriate); <u>Friedman v. Sec'y of HHS</u>, 94 Fed. Cl. 323, 334 (Fed. Cl. 2010) (Judge Damich found that the statute permits interim fee awards and that the special master acted within his discretion in choosing not to award interim fees); <u>Doe/11 v. Sec'y of HHS</u>, 89 Fed. Cl. 661, 668 (Fed. Cl. 2009) (Judge Williams reversed the special master's denial of interim fees); <u>Bear v. Sec'y of HHS</u>, No. 11-362V, 2013 WL 691963, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) (Special Master Hastings awarded interim fees over respondent's objection in a case where petitioner's counsel was going to withdraw, and the petition had been pending for more than 19 months); <u>Lumsden v. Sec'y of HHS</u>, No. 97-588, 2012 WL 1450520, at *6 (Fed. Cl. Spec. Mstr. Mar. 28, 2012) (Special Master Vowell awarded interim fees in an autism case over respondent's objection when petitioner's attorney was withdrawing from the case); <u>Edmonds v. Sec'y of HHS</u>, No. 04-87V, 2012 WL 1229149, at *13 (Fed. Cl. Spec. Mstr. Mar. 22, 2012) (Then-Chief Special Master Campbell-Smith awarded interim fees over respondent's objection in an autism case in which petitioner's counsel was preparing to withdraw); <u>Dudash v. Sec'y of HHS</u>, No. 09-646V, 2011 WL 1598836, at *6 (Fed. Cl. Spec. Mstr. Apr. 7, 2011) (Special Master Moran found an award of interim fees appropriate); <u>Burgess v. Sec'y of HHS</u>, No. 07-258V, 2011 WL 159760, at *2 (Fed. Cl. Spec. Mstr. Jan. 3, 2011) (Former Special Master Lord awarded interim attorneys' fees in a case where petitioners were soon to be represented by other counsel).

## III.      Interim Fees are Appropriate in This Case

In <u>Avera</u>, the Federal Circuit held that while interim fees are not banned by the statute, they were not appropriate in that case because appellants only sought interim fees pending appeal.  515 F.3d at 1352.  The Federal Circuit stated, "Interim fees are particularly appropriate

in cases where proceedings are protracted and costly experts must be retained." <u>Id.</u>  In denying an interim fee award, the Federal Circuit reasoned, "The amount of fees here was not substantial; appellants had not employed any experts; and there was only a short delay in the award pending the appeal." <u>Id.</u>

In <u>Shaw,</u> the Federal Circuit clarified that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375.  The Court of Federal Claims and several special masters have found an interim fee award appropriate when petitioner's counsel withdraws from the case.  <u>See Woods,</u> 105 Fed. Cl. at 154; <u>Bear,</u> 2013 WL 691963 at *5; <u>Lumsden,</u> 2012 WL 1450520 at *6; <u>Edmonds,</u> 2012 WL 1229149 at *13<u>; Burgess,</u> 2011 WL 159760 at *2.

### a.   Good Faith & Reasonable Basis

Petitioner is entitled to a presumption of good faith, and respondent does not contest that the petition was filed in good faith.  There is no evidence that this petition was brought in bad faith; therefore, the undersigned finds that the good faith requirement is present.

In contrast, respondent does contest that this petition is supported by a reasonable basis. Respondent asserts that petitioner has the burden to affirmatively demonstrate reasonable basis. <u>McKellar,</u> 101 Fed. Cl. at 305.  Respondent argues that the reasonable basis provision should not be interpreted too broadly, or it will be rendered meaningless. Resp. at 23–24.  She argues that there was no reasonable basis in this case because the medical records show that many of petitioner's complaints preceded her vaccination, petitioner received pre-vaccination exposure to biologic agents, and there was a greater than three-month time period between petitioner's vaccination and her complaint of swollen lymph nodes (which were not confirmed by subsequent imaging).  <u>Id.</u> at 25.  In addition, respondent argues that lab tests a year after vaccination did not show evidence of an immune deficiency, petitioner's MS diagnosis is tenuous and its onset difficult to discern, and petitioner received at least three opinion letters from doctors that did not support her claim.  <u>Id.</u> at 25–26.

In contrast, Mr. Krueger asserts that petitioner has met her burden to demonstrate reasonable basis.  Mr. Krueger argues that the Vaccine Act's fee-shifting provision should be interpreted broadly, citing cases in which the Supreme Court ruled that attorneys' fees may be provided even when a petition is filed after the statute of limitations and the Court of Federal Claims ruled that fees may be awarded for bringing a petition relating to a vaccine that is not covered by the Vaccine Act.  <u>Cloer,</u> 133 S. Ct. at 1895; <u>Scanlon v. Sec'y of HHS,</u> 116 Fed. Cl. 629 (Fed. Cl. 2014).  He states that the petition was supported by a reasonable basis because the initial medical records seemed to indicate a connection between the vaccine and the injury, there is support in the medical community of a link between MS and flu vaccine, counsel reasonably believed petitioner's treating medical providers would opine that her injuries were caused by the flu vaccine, and the statute of limitations deadline was near its expiration.  Reply at 8.

This petition was filed nineteen days prior to the expiration of the three-year statute of limitations.  Claims filed near the expiration of the statute of limitations have traditionally

received the most lenient treatment when analyzing reasonable basis. See Austin, 2013 WL 659574, at *9. ("[S]pecial masters have recognized that the ability to investigate adequately a claim is constrained by the need to file quickly to preserve the claim, and have found the balance between these competing obligations favors filing."). Id. Reasonable basis that exists in the early stages of a case, especially when a petition is filed quickly in order to comply with the statute of limitations, may be lost as more information is obtained. See id.; Hamrick, 2007 WL 4793152, at *7. Here, given the looming statute of limitations, a lenient approach to assessing reasonable basis is appropriate.

Petitioner has filed medical records showing that she received the seasonal flu vaccine, a vaccine covered in the Vaccine Injury Table, on December 18, 2009. Med. recs. Ex. 2, at 53–54. There is some support in the medical records that she suffered her alleged injuries, MS and an immune deficiency. Med. recs. Ex. 14, at 18–19; Med. recs. Ex. 10, at 7; Id. at 56. In addition, Dr. DelaTorre, one of her primary care physicians, opined that her immune deficiency was probably due to the flu or $H_1N_1$ vaccination she received after an $H_1N_1$ infection. Med. recs. Ex. 10, at 56. The undersigned finds that the facts demonstrated in the medical records combined with the impending expiration of the statute of limitations gave Mr. Krueger a reasonable basis to file the petition, obtain the relevant medical records, and attempt to find an expert to support petitioner's allegations. An award of reasonable attorneys' fees and costs is merited.

### b. Protracted Proceedings

Additionally, interim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship on petitioner. As previously mentioned, many special masters have found that the withdrawal of counsel can constitute undue hardship. See Woods, 105 Fed. Cl. at 154; Bear, 2013 WL 691963 at *5; Lumsden, 2012 WL 1450520 at *6; Edmonds, 2012 WL 1229149 at *13; Burgess, 2011 WL 159760 at *2. The petition has been pending for twenty-two months. Petitioner reports that she has retained counsel, who has not been admitted to the U.S. Court of Federal Claims. Petitioner's new attorney will need to gain admission to the U.S. Court of Federal Claims bar and then seek an expert report. It may be months to years before an entitlement or damages decision is issued. Thus, the undersigned rejects respondent's objection to an award of interim fees and costs at this juncture and finds an award of interim fees and costs appropriate.

### IV.   Reasonableness of Requested Interim Attorneys' Fees and Costs

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera, 515 F.3d at 1347. The lodestar approach involves a two-step process. First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347–48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348.

The lodestar approach requires that the reasonable hourly rate be multiplied by the number of hours "reasonably expended on the litigation." Avera, 515 F.3d at 1347–48 (quotation and citation omitted). Counsel must submit fee requests that include

contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task.  See Savin v. Sec'y of HHS, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008).  Counsel must not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  Saxton v. Sec'y of HHS, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done."  Id.  Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond.  See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009).

Attorneys' costs must also be reasonable.  See Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both.  Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs.").

Petitioner requests fees and costs for Mark L. Krueger of Baraboo, Wisconsin.  Petitioner filed an invoice dating from July 2012 through June 2014.  This invoice includes fees billed for Mr. Krueger and for Renee Nehring, a paralegal.  Petitioner seeks reimbursement for 37.3 hours of work completed by Mr. Krueger, billed at a rate of $300 per hour, and 102.6 hours of work completed by Ms. Nehring, billed at a rate of $150 per hour.  Petitioner also seeks $3,349.96 for attorneys' costs incurred from August 2012 to June 2014.  An invoice for costs is also included with petitioner's application.

### a. Mark Krueger's Hourly Rate

A reasonable hourly rate is "'the prevailing market rate,' defined as the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  Avera, 515 F.3d at 1348 (quoting Blum, 465 U.S. at 888).  In Avera, the Federal Circuit found that in Vaccine Act cases, a court should use the forum rate, i.e., the District of Columbia rate, in determining an award of attorneys' fees.  Id. at 1349.  At the same time, the court adopted the Davis County exception to prevent windfalls to attorneys who work in less expensive legal markets.  Id. (citing Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)).  In cases where the bulk of the work is completed outside the District of Columbia and there is a "*very significant* difference" between the forum hourly rate and the local hourly rate, the court should calculate an award based on local hourly rates.  Id. (finding the market rate in Cheyenne, Wyoming to be very significantly lower than the market rate in Washington, DC).  The Davis County exception does not apply when the forum rates are lower than an attorney's local rate.  Id.; Rodriguez v. Sec'y of HHS, 2009 WL 2568468, at *19 (Fed. Cl. Spec. Mstr. July 27, 2009).

Petitioner submits that her counsel, Mr. Krueger, should be compensated at hourly rates of $300 per hour.  Mr. Krueger has been practicing law since 1985 and has been practicing in the U.S. Court of Federal Claims since 1996.  Petitioner submits that an hourly rate of $300 is appropriate, as it has been agreed upon by the Department of Health and Human Services in previous vaccine cases.

Respondent does not contest Mr. Krueger's hourly rate.

The undersigned finds that petitioner's counsel is entitled to the forum rate in Washington, DC, rather than the local geographic hourly rate in Baraboo, Wisconsin. Avera, 515 F.3d at 1349. Neither party has presented evidence that the Wisconsin geographic rate is "very significantly lower" than the forum rate. Id.

After reviewing Mr. Krueger's years of experience, reputation, and skill, and comparing this with other attorneys with comparable factors, the undersigned finds that an hourly rate of $300 for 2012 to 2014 is reasonable. This rate is comparable to the forum rates the undersigned found in 2011. Carcamo, 2011 WL 2413345.

### b.  Renee Nehring's Hourly Paralegal Rate

Petitioner seeks an hourly rate of $150 for work performed by Renee Nehring. Petitioner asserts that this rate is appropriate, as it has been agreed upon by the Department of Health and Human Services in previous vaccine cases. App. at 2.

Respondent does not contest this hourly rate. However, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond. See Sabella, 86 Fed. Cl. at 208–09.

A review of the invoice shows that Ms. Nehring performed tasks consistent with standard paralegal duties (requesting and reviewing medical records, communicating with the client and potential experts, preparing exhibit sheets, etc.). The undersigned and other special masters in the Vaccine Program have determined that paralegal rates of up to $125 per hour are reasonable forum rates. See Yang v. Sec'y of HHS, No. 10-33V, 2013 WL 4875120, at *4 (Fed. Cl. Spec. Mstr. Aug. 22, 2013); Brown v. Sec'y of HHS, No. 09-426V, 2012 WL 952268, at *3 (Fed. Cl. Spec. Mstr. Feb. 29, 2012); Broekelschen v. Sec'y of HHS, No. 07-137V, 2011 WL 2531199, at *3 (Fed. Cl. Spec. Mstr. June 3, 2011), aff'd, 102 Fed. Cl. 719, 723 (Fed. Cl. 2011).

The undersigned finds that an hourly rate of $125 for Ms. Nehring for 2012 to 2014 is reasonable. Petitioner has presented no evidence as to why Ms. Nehring has particular skills that make her more qualified than the typical paralegal and would thus merit a higher rate than what has previously been deemed reasonable by the undersigned and other special masters.

### c.  Reasonable Hours Expended

Respondent does not contest the amount of hours expended. After reviewing the invoice, the undersigned does not consider any of the billed items to be duplicative. Based on her experience in the Program, the undersigned finds the number of hours expended by Mr. Krueger and Ms. Nehring to be reasonable.

**d.   Reasonable Costs Expended**

Petitioner requests $3,349.96 in interim costs.  Respondent does not object to any of petitioner's interim costs.  After reviewing the invoice, the undersigned finds the costs requested to be reasonable.

**CONCLUSION**

The undersigned finds an award of interim fees appropriate.  In sum, undersigned awards to petitioner the following amount for interim attorneys' fees and costs:

**Attorney's fees for Mark Krueger:**
Requested:      37.3 hours at $300 per hour = $11,190.00
Awarded:       37.3 hours at $300 per hour = **$11,190.00**

**Paralegal fees for Renee Nehring:**
Requested:      102.6 hours at $150 per hour = $15,390.00
Awarded:       102.6 hours at $125 per hour = **$12,825.00**

**Costs:**
Requested:      $3,349.96
Awarded:       **$3,349.96**

**Total interim fees and costs:**
Requested:      $29,929.26
Awarded:       **$27,364.96**

The undersigned finds this amount to be reasonable and awards **$27,364.96**, representing reimbursement for interim attorneys' fees and costs.  The award shall be in the form of a check made payable jointly to petitioner and Krueger & Hernandez, S.C. in the amount of **$27,364.96**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED.**

Dated: <u>September 30, 2014</u>                          _____
                                                                          Laura D. Millman
                                                                          Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.